IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK T. PERANO, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 09-00754 |
| | : | |
| v. | : | |
| | : | |
| TOWNSHIP OF TILDEN, et al., | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

**Slomsky, J.**                                                               **April 12, 2010**

I.      **INTRODUCTION**

This matter is before the Court on two Motions to Dismiss filed by Defendants.   The first

Motion to Dismiss (Doc. No. 28) was filed by Defendants Carbon Engineering, Inc. ("Carbon")

and Ronald Tirpak, individually and in his capacity as Township Engineer (collectively

"Engineer Defendants").  The second Motion to Dismiss (Doc. No. 29) was filed by Defendants

Township of Tilden ("Township" or "Tilden"); Troy R. Hatt, individually and in his capacity as a

Township Supervisor; Russell H. Werley, individually and in his capacity as a Township

Supervisor; Judy E. Romig, individually and in her capacity as a Township Supervisor; John

Yoder, individually and in his capacity as Township Zoning and Code Enforcement Officer; and

Cheryl A. Haus, individually and in her capacity as Township Secretary (collectively "Township

Defendants"). Plaintiff filed a Response in Opposition to each Motion (Doc. Nos. 31 and 30

respectively) and Engineer Defendants and Township Defendants each filed a Reply in Support

of their Motions to Dismiss (Doc. Nos. 34 and 35 respectively).  On March 12, 2010, the Court

held a hearing on the Motions. Township Defendants filed supplemental exhibits following the hearing (Doc. No. 40).[1]

Upon consideration of the parties' briefs, exhibits, and oral arguments, and after an independent review of the allegations in the Amended Complaint, Defendants' Motions to Dismiss will be granted and Plaintiff's Amended Complaint will be dismissed with prejudice.

## II.    PROCEDURAL HISTORY

On February 23, 2009, Plaintiff Frank T. Perano d/b/a GSP Management Co. commenced this action by filing a Complaint against the Township of Tilden, the Township Engineer, and several Township officials in their individual and official capacity.  (Doc. No. 1.)  On May 14, 2009, Engineer Defendants filed a Motion to Dismiss (Doc. No. 13) and on May 26, 2009,

---

[1] To resolve a Rule 12(b)(6) Motion to Dismiss, courts generally review the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004).  Public records may include the transcripts of proceedings and opinions from other courts.  Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999). Courts may only take judicial notice of such proceedings or opinions for the purpose of establishing their existence, not for establishing the truth of the underlying facts contained within them.  Id.

In this case, the supplemental exhibits filed by Township Defendants (Doc. No. 40) contain matters of public record as well as private correspondence between various Defendants and Plaintiff.  The exhibit consisting of private correspondence (Ex. C) will be excluded from the Court's consideration, because it is not a matter of public record and it does not contain documents that form the basis of Plaintiff's claim.  The exhibits representing matters of public record (Ex. B, D-G) will be judicially noticed.  Exhibit B is a January 7, 2010 Order from Judge Jeffrey L. Schmehl, Berks County Court of Common Pleas.  Exhibit D contains the February 20, 2010 joint public meeting minutes of the Tilden Township Board of Supervisors and the Hamburg Municipal Authority.  Exhibit E is a Motion to Enforce Consent Decree filed by Tilden Township, filed January 4, 2008.  Exhibit F is a Declaration of Taking, filed by Condemnor Tilden Township on April 27, 2009, and a July 13, 2009 Order of Judge Schmehl denying Condemnee Perano's Preliminary Objections to the Declaration of Taking.  Exhibit G is Judge Schmehl's Memorandum Opinion Denying and Dismissing Condemnee/Appellant Perano's Preliminary Objections to the Declaration of Taking, filed December 2, 2009.

Township Defendants filed a Motion to Dismiss (Doc. No. 14). On June 26, 2009, Plaintiff filed a Motion for Leave to File an Amended Complaint (Doc. No. 20). Thereafter, the Court granted Plaintiff's Motion, and denied Defendants' Motions to Dismiss without prejudice to re-file such Motions after Plaintiff filed an Amended Complaint. (Doc. Nos. 23-25.) The Order allowing Plaintiff to amend specifically stated that the purpose was to allow Plaintiff to add the Pennsylvania Department of Environmental Protection ("PADEP") as a party and to supplement and detail additional facts to its Section 1983 and Section 1985 claims. (Doc. No. 25.) On September 10, 2009, Plaintiff filed an Amended Complaint (Doc. No. 27), but did not add the PADEP as a party. Plaintiff also removed the Section 1985 claims and added a constitutional claim under the Contract Clause, U.S. Const. art. I, § 10.

Counts I and II of the Amended Complaint are brought under 42 U.S.C. § 1983 and allege that Defendants violated Plaintiff's right to equal protection, substantive due process, and procedural due process. Count III is also brought under 42 U.S.C. § 1983 and alleges that Defendants conspired to deprive Plaintiff of the same constitutional rights. Count IV alleges impairment of a contract in violation of Article I, Section 10 of the United States Constitution.

## III. FACTUAL BACKGROUND[2]

Plaintiff is the developer and owner of the Pleasant Hills Mobile Home Park in Tilden Township, Berks County, Pennsylvania. (Am. Compl. ¶¶ 11-12.) The crux of this action concerns disputes between Plaintiff, a developer, and Defendants, who are township officials responsible for enforcing local land-use laws. Plaintiff alleges the following wrongful conduct

---

[2] The facts are taken from the Amended Complaint, except where noted, and are viewed in the light most favorable to Plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

by Defendants: (1) refusing to apply the appropriate land-use laws; (2) handling Plaintiff's application process and development of the property in a manner calculated to delay, frustrate, and ultimately discourage Plaintiff from developing the property; (3) threatening retaliation and actually retaliating against Plaintiff for persisting in the approval and development process; (4) attempting to shut down Plaintiff's business; (5) spuriously refusing to grant approvals, licenses, and permits; (6) favoring the interests of other developers in the Township over those of Plaintiff; and (7) intentionally failing to comply with their responsibility and obligation to provide a public water source. (Am. Compl. ¶ 1.)

In sum, the Amended Complaint alleges that several vexatious actions taken by Township officials over a span of several years, when considered cumulatively, demonstrate violations of Plaintiff's constitutional right to the use and development of his property.

<u>Early Litigation and Consent Order</u>

Operation of Plaintiff's Mobile Home Park began in 1990 and the Park has undergone expansion in phases. (<u>Id.</u> at ¶ 33.) As the Mobile Home Park expanded, opposition grew within the Township. (<u>Id.</u> at ¶ 14.) The Tilden Action Group ("TAG"), of which Defendant Romig was a founding member, was formed to oppose development of the Mobile Home Park. (<u>Id.</u> at 16.) The opposition resulted in an attempt to amend Township zoning ordinances to prevent further development of the Mobile Home Park. (<u>Id.</u> at ¶ 14.) In 1997, Plaintiff filed an action in state court challenging the proposed zoning amendment. (<u>Id.</u> at ¶ 15.)

On November 4, 1999, Plaintiff and Tilden entered into a Consent Order to resolve the state court litigation. (<u>Id.</u> at ¶ 18.) The Consent Order set forth the parties' obligations regarding further development of the Mobile Home Park and is expressly governed by Pennsylvania law.

(Township Defendants' Motion to Dismiss, Ex. A at ¶ 19.)[3]   The Consent Order provided, <u>inter alia</u>, that the Township would use its best efforts to make available sewage and water for the exclusive use of Plaintiff's Mobile Home Park.  (<u>Id.</u> at ¶ 13.)  Initial availability of sewage and water capacity was made contingent upon final land development approval of Phases VI and VII of the Mobile Home Park.  (<u>Id.</u> at ¶ 13(A)(I).)

The Consent Order continues to be the subject of litigation between the parties.  On January 7, 2010, Judge Jeffrey L. Schmehl of the Court of Common Pleas, Berks County, Pennsylvania, granted in part and denied in part Plaintiff's Petition to Enforce the Consent Order.  (Township Defendants' Supplemental Exhibits, Ex. B.)[4]

<u>Denial of Sewage and Water Capacity</u>

The Township granted final approval for Phase VII on June 5, 2001, and conditional final approval for Phase VI on July 1, 2006.[5]  (Am. Compl. ¶ 19.)  As part of this conditional approval, Plaintiff must develop sewage and water distribution systems for Phase VI of the Mobile Home Park in accordance with the rules and regulations promulgated by the PADEP.  (<u>Id.</u> at ¶ 20.)  The

---

[3] As noted above, in deciding a motion to dismiss, a court may consider documents outside of the complaint, such as matters of public record, court orders, and documents that form the basis of the claim.  Lum, 361 F.3d at 222 n.3.  A document forms the basis of the claim when it is expressly relied upon in the complaint.  Id.  Where Plaintiff fails to attach documents pertinent to the complaint, and Defendants attach such documents to a Motion to Dismiss, the Court may rely on those documents.  <u>In re Tutu Wells Contamination Litigation</u>, 846 F. Supp. 1243, 1273 (D.V.I. 1993).  Plaintiff references and relies upon the existence of the Consent Order throughout the Amended Complaint.  Therefore, the Court will rely upon the Consent Order attached as an exhibit to Township Defendants' Motion to Dismiss.

[4] The Court takes judicial notice of the existence of Judge Schmehl's Order, but makes no judgment as to the truth of any facts stated therein.  <u>Southern Cross</u>, 181 F.3d at 426-27.

[5] These dates are taken from the Amended Complaint and are accepted as true, although it seems illogical that Phase VII received approval five years prior to Phase VI.

conditional approval also includes a plan for Plaintiff to install a new sewage collection and transportation system and public water distribution system to connect to the existing sewage and water systems owned by the Township.  (Id. at ¶ 21.)

Plaintiff alleges that, despite the conditional approval and the Consent Order, Defendants have intentionally, arbitrarily, and without basis in law prohibited Plaintiff from connecting the water distribution system for the Mobile Home Park to the public water supply and distribution system owned by the Township.  (Id. at ¶ 22.)  Plaintiff also alleges that the Engineer Defendants intentionally and arbitrarily advised the Township to take no action to provide public water to Plaintiff.  (Id. at ¶ 23.)  As a result, Plaintiff is unable to provide water to Phase VI of the Mobile Home Park in accordance with the rules and regulations of the PADEP and therefore cannot develop this phase of the Mobile Home Park.  (Id. at ¶¶ 26-27.)

Denial of Operating License

Pursuant to Tilden Township Ordinances, Plaintiff must annually obtain a licence from the Township to operate the Mobile Home Park.  (Id. at ¶ 32.)  Plaintiff obtained a license every year from1990 through 2006.  (Id. at ¶ 33.)  On March 30, 2007, just as he had done in prior years, Plaintiff submitted the license renewal application and the $1,640 fee to the Township. The Township accepted the fee in August 2007.  (Id. at ¶¶ 35-36.)  Since that time, the Township has neither returned the fee nor issued a denial of the license renewal for the calendar year 2007. (Id. at ¶ 37.)  As a result, once Plaintiff's fee was accepted by the Township, Plaintiff believed his license had been renewed even though he never received a physical copy of the license and never made further inquiry despite not receiving the license.  (Statement of Plaintiff's Counsel, Hearing, Mar. 12, 2010.)

On November 10, 2007, the Tilden Township Supervisors (Hatt, Werley, and Romig - collectively "Township Supervisors") convened the monthly meeting of the Township Supervisors, at which time Cheryl A. Haus ("Township Secretary") announced that Plaintiff was operating the Mobile Home Park without a license. (Id. at ¶¶ 38-39.) Plaintiff alleges that this announcement was made without granting him notice and the opportunity to be heard in violation of his right to procedural due process. (Id. at ¶¶ 40-41.)

Stop-Work Orders and Denial of Permits

On June 28, 2007, the Zoning Officer entered and inspected Plaintiff's property without notice or permission, which resulted in a letter from the Officer to the Township Supervisors describing "every possible alleged violation he could find." (Id. at ¶ 49.) A formal notice of violation was never issued to Plaintiff. However, on August 28, 2007, the Township instructed the Zoning Officer to send a notice of hearing for alleged violations. (Id. at ¶ 50.) Plaintiff's Counsel requested that the hearing be continued to a different date. Since this request, neither Plaintiff nor the Township have rescheduled the hearing.

Additionally, as a result of the November 10, 2007 announcement that Plaintiff was operating the Mobile Home Park without a license, the Township Supervisors unanimously approved a motion directing the Zoning Officer to issue a stop-work order for any projects and/or permits previously issued for the Mobile Home Park and directing the Zoning Officer not to issue any future building permits for the Mobile Home Park. (Id. at ¶ 43.) Plaintiff alleges that this motion was approved without granting Plaintiff notice and the opportunity to be heard in violation of his right to procedural due process. (Id. at ¶¶ 45-46.)

On November 14, 2007, without notice or a hearing, the Zoning Officer issued a stop-

work order on Plaintiff's real estate and business operations.  (Id. at ¶ 55.)  The Township, the

Township Supervisors, and the Zoning Officer further denied building permits to Plaintiff's

potential residents based on the alleged inability of Plaintiff to provide capacity for sewage

treatment.  (Id. at ¶ 56.)[6]

The Zoning Officer also reported that he received a letter from the PADEP stating that the

Mobile Home Park did not have sufficient sewage capacity to treat additional residents.  (Id. at ¶

57.)  Thereafter, on November 20, 2007, the Township Supervisors passed a motion to authorize

the solicitor's office to send a letter to Plaintiff stating that no new homes would be permitted to

be placed on Plaintiff's property until a license was issued.  (Id. at ¶ 54.)

In response, Plaintiff made an open records request for any and all documentation from

the PADEP to Tilden that would indicate that the Mobile Home Park did not have sufficient

sewage capacity.  (Id. at ¶ 58.)  The Township Secretary replied that no such documentation

existed.  (Id. at ¶ 59.)  Plaintiff then submitted to the Township all permits and plans related to

the Mobile Home Park's ability to provide sewage capacity, which demonstrated more than

adequate capacity for additional residents on the property.  (Id. at ¶ 60.)  Despite this

documentation from Plaintiff, the Zoning Officer and the Township continued to deny permits.

(Id. at ¶ 61.)

Eminent Domain Proceedings

On November 10, 2007, the Township Supervisors instructed the solicitor's office to

issue a motion to compel Plaintiff to turn over ten (10) acres of land to the Township.  (Id. at ¶

---

[6] A "building permit" is required for each new Mobile Home Park resident.  If such
permits are denied, Plaintiff cannot accept any new tenants at the Mobile Home Park.

52.)  Plaintiff alleges this action was taken in retaliation for Plaintiff's request for access to the public water supply and for Plaintiff's insistence that the Zoning Officer arbitrarily and recklessly attempted to enforce ordinances against Plaintiff which were not applicable.  (Id. at ¶ 53.)

On April 27, 2009, the Township filed a Declaration of Taking pertaining to a perpetual sanitary sewer easement against a portion of Plaintiff's property.  (Township Defendants' Supplemental Exhibits, Ex. F.)  Plaintiff's Preliminary Objections to the Declaration were denied by Judge Schmehl in the Court of Common Pleas.  (Township Defendants' Supplemental Exhibits, Ex. G.)  During the March 12, 2010 hearing before this Court, Plaintiff's Counsel advised that an appeal of this decision is currently pending in the Commonwealth Court.

## IV.    STANDARD OF REVIEW

Defendants have moved to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  The Motion to Dismiss standard has undergone recent transformation, culminating with the Supreme Court's Opinion in  Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" in defeating a Motion to Dismiss.  Id. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Applying the principles of Iqbal, the Third Circuit in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), articulated a two-part analysis that district courts in this Circuit must conduct in evaluating whether allegations in a complaint survive a Motion to Dismiss.   First, the factual and legal elements of a claim should be separated, meaning "a District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Id. at

210-11. Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211. In other words, a complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Id. (citing Phillips, 515 F.3d at 234-35). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown' – 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950. This "plausibility" determination under step two of the analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## V.  DISCUSSION

### A.  Liability of the Engineer Defendants

Defendants' Motions to Dismiss seek dismissal of Plaintiff's Amended Complaint in its entirety. However, Engineer Defendants have raised one issue not raised by Township Defendants, which the Court must address first. Engineer Defendants assert that they do not have authority to conduct hearings, make announcements, issue licences, or approve motions, and they have no role in procedural decisions which are voted on by the Township Supervisors. (Engineer Def.'s Motion to Dismiss, 9; Engineer Def.'s Reply in Support, 4.) Lacking such authority, Engineer Defendants argue that they cannot be liable for any of the alleged violations of Plaintiff's constitutional rights under 42 U.S.C. § 1983.

At the Motion to Dismiss stage, the Court must accept Plaintiff's factual assertions as true. Plaintiff has at least minimally alleged that Engineer Defendants (1) prohibited Plaintiff from accessing the public water system, (2) intentionally and arbitrarily refused to undertake any actions in conformity with the Berks County Court of Common Pleas Consent Order, and (3)

refused to start the necessary process with the PADEP in violation of the Consent Order. (Am. Compl. ¶¶ 22-25.) Furthermore, by statute, Engineer Defendants are responsible for "the superintendence, direction and control of the engineering matters of the township." 53 P.S. § 56303.

It is therefore at least plausible that the official actions of the Engineer Defendants, whether advisory or otherwise, played a role in causing the alleged harm suffered by Plaintiff. See, e.g., Blanche Road Corp. v. Bensalem Twp., 1996 WL 368347, at *1 (E.D. Pa. June 25, 1996) (finding, in a Section 1983 claim against a township, that the township engineer had been delegated sufficient authority for his actions to constitute a policy or practice which contributed to the constitutional violations at issue).

Accordingly, for purposes of deciding these Motions only, Engineer Defendants will be considered officials with the same or similar authority as the Township Defendants. For the remainder of this Opinion, any reference to "Defendants" will be a reference to all Defendants, unless noted otherwise.

## B.     Merger of Official Capacity Claims

The individual Defendants urge the Court to dismiss claims filed against them in their official capacity because the Township is also a named defendant. In Section 1983 suits, the Supreme Court has stated that a claim against a government officer in his official capacity is the same as a claim against the entity of which the officer is an agent. McMillian v. Monroe County, 520 U.S. 781, 785 n.2 (1997). Plaintiff's Counsel stipulated to this statement of law at the March 12, 2010 hearing. Therefore, the Court will dismiss all claims against the individual Defendants in their official capacity as they merge with the claims against the Township.

11

### C.    Procedural Due Process

In the Third Circuit, to allege a cause of action for a violation of procedural due process, a plaintiff must show that (1) a person acting under color of state law deprived him of a protected property interest, and (2) the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process.  DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 597 (3d Cir. 1995), overruled on other grounds by United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392 (3d Cir. 2003).  To determine whether Plaintiff has been deprived of due process the Court must determine "what process the State provided, and whether it was constitutionally adequate."  Revell v. Port Auth. of N.Y. & N.J., 2010 WL 1006651, *7 (3d Cir. Mar. 22, 2010) (quoting Zinermon v. Burch, 499 U.S. 113, 126 (1990)).

Plaintiff's protected property interest in his land is not disputed by Defendants.  The element of procedural due process that is in dispute is whether Plaintiff has properly alleged that the state procedure for challenging the alleged deprivation fails to satisfy the requirement of procedural due process.

When a state provides "reasonable remedies to rectify a legal error by a local administrative body," it provides constitutionally adequate procedural due process.  Id.  As further explained in DeBlasio, "when a state 'affords a full judicial mechanism with which to challenge the administrative decision' in question, the state provides adequate due process . . . whether or not the plaintiff avails [himself] of the provided appeal mechanism."  Id. (quoting Bello v. Walker, 840 F.2d 1124, 1128 (3d Cir. 1988)).  Moreover, the Third Circuit has recognized that procedures for challenging zoning ordinances and denials of building permits under Pennsylvania law conform with the Constitution's due process guarantee.  Bello, 840 F.2d

at 1128. The Third Circuit has also noted that "[a]lthough a pre-deprivation hearing is generally required before a state seizes a person's property, '[i]n some circumstances . . . the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process.'" Revell, 2010 WL 1006651, at *7 (quoting Zinermon, 499 U.S. at 128).

In this case, Perano argues that his right to procedural due process was violated by the Township's denial of building permits and licenses, application of inappropriate ordinances, and initiation of eminent domain proceedings. However, even if the Township acted arbitrarily and failed to base its decisions on applicable law, such an argument does not demonstrate a failure to provide adequate procedural due process. Highway Materials, Inc. v. Whitemarsh Twp., 2004 WL 2220974, *10 (E.D. Pa. Oct. 4, 2004). Similarly, allegations that the Township has not followed state law or that its actions were illegal is immaterial — "a violation of state law is not a denial of due process of law." Maple Properties, Inc. v. Twp. of Upper Providence, 151 Fed. App'x 174, 179 (3d Cir. 2005) (quoting Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461, 468-69 (7th Cir. 1988)). Pennsylvania law provides procedures for dealing with such adverse actions.

More to the point, Pennsylvania law, through the Municipalities Planning Code (53 P.S. § 10101 et seq.)[7] and the Eminent Domain Code (26 Pa. C.S.A. § 101 et seq.),[8] is applicable to

---

[7] See, e.g., 53 P.S. § 10501 (granting the governing body of each municipality the power to regulate mobile home parks); 53 P.S. § 10909.1 ("The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in . . . [a]ppeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit, or failure to act on the application therefor, the issuance of any cease and desist order . . ."); 53 P.S. § 1057 ("Where a subdivision and land development ordinance has been enacted by a municipality under the authority of this article no subdivision or land development of any lot . . .

Plaintiff's land-use disputes with the Township and provides a judicial mechanism through which Plaintiff may contest land-use decisions of the Township.[9] In fact, Plaintiff has a state court Consent Decree and outstanding state court litigation regarding the Township's land-use decisions, which shows that Pennsylvania provides "reasonable remedies to rectify a legal error by a local administrative body." Bello, 840 F.2d at 1128; see also Miles v. Township of Barnegat, 2008 WL 89910 (D.N.J. Jan. 7, 2008) (granting Motion to Dismiss Plaintiff's procedural due process claim because state law provides full judicial mechanism to challenge alleged legal error by local administrative body), aff'd, 2009 WL 2840733 (3d Cir. Sept. 4,

---

shall be made, no . . . water main or other improvements . . . shall be laid out, constructed, opened or dedicated . . . for the common use of occupants . . . except in accordance with the provisions of such ordinance."); 53 P.S. § 10503.1 ("Every ordinance adopted pursuant to this article shall include a provision that, if water is to be provided by means other than by private wells . . . applicants shall present evidence to the governing body . . . that the subdivision or development is to be supplied by a certificated public utility . . . or by a municipal corporation, authority or utility.").

[8] See, e.g., 26 Pa. C.S.A. § 101 et seq. (the Eminent Domain Code governs condemnations of property for public purposes); 26 Pa. C.S.A. § 102 ("[t]his title provides a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages.").

[9] See 53 P.S. § 10909.1(a) ("The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications" regarding, inter alia, the validity of land use ordinances, appeals from determinations of zoning officers (including granting or denial of any permit, or the issuance of any cease and desist order), and appeals from a determination by a municipal engineer); 53 P.S. § 10910.1 ("Nothing contained in this article shall be construed to deny the appellant the right to proceed directly to court where appropriate, pursuant to the Pennsylvania Rules of Civil Procedure No. 1091 (relating to action in mandamus)"; 53 P.S. § 11002-A ("All appeals from all land use decisions rendered pursuant to Article IX [53 P.S. § 10901 et seq.] shall be taken to the court of common pleas of the judicial district wherein the land is located . . ."); 53 P.S. § 11006-A ("In a land use appeal, the court shall have power to declare any ordinance or map invalid and set aside or modify any action, decision or order of the agency or officer of the municipality brought up on appeal."); 26 Pa. C.S.A. § 102 ("This title provides a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages.").

2009). Therefore, as already noted, Pennsylvania provides adequate procedural due process by affording Plaintiff a full judicial mechanism through which to challenge the Township's land-use decisions. DeBlasio, 53 F.3d at 597.

Accordingly, the Court finds that Plaintiff has not asserted a procedural due process claim sufficient to raise his right to relief above the speculative level. Defendants' Motions to Dismiss Plaintiff's procedural due process claims in Counts I and II of the Amended Complaint will be granted.

### D.      Substantive Due Process

To properly plead a substantive due process claim, in the context of a land-use dispute, Plaintiff must allege that (1) he has a property interest protected by the Fourteenth Amendment, and (2) he was deprived of that interest by local officials' behavior that shocks the conscience. Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008).[10]

The shocks the conscience test is satisfied only by the most "egregious" official conduct. Eichenlaub v. Township of Indiana, 385 F.3d 274, 285 (3d Cir. 2004). Whether the conduct complained of "shocks the conscience" will depend on the facts of the case. United Artists, 316 F.3d at 399-400 ("the meaning of [the shocks the conscience] standard varies depending on the factual context"). However, it is clear that federal courts employ this test to avoid converting federal courts into super zoning boards of appeals. Id. at 402.

---

[10] Plaintiff's reliance on Ryan v. Lower Merion Twp., 205 F. Supp. 2d 434, 442 (E.D. Pa. 2002), for the proposition that it is sufficient to plead that Defendants acted in an arbitrary and capricious manner is misplaced. Ryan was decided prior to United Artists, which announced that the conduct complained of in a substantive due process claim must "shock the conscience." United Artists, 316 F.3d at 399 (citing County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)). To the extent that Ryan applies an "arbitrary and capricious" standard, it has been abrogated by United Artists.

In Eichenlaub the Third Circuit analyzed the shocks-the-conscience standard in the context of a land-use dispute. In that case, the Third Circuit affirmed the district court's holding that the misconduct alleged by plaintiff did not "rise sufficiently above that at issue in a normal zoning dispute to pass the 'shocks the conscience test.'" Eichenlaub, 385 F.3d at 286. The Eichenlaubs asserted that:

> [Z]oning officials applied subdivision requirements to their property that were not applied to other parcels; that they pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled the Eichenlaubs.

Id. There was no allegation of corruption or self-dealing, and "the local officials were not accused of seeking to hamper development in order to interfere with otherwise constitutionally protected activity at the project site, or because of some bias against an ethnic group." Id. Reiterating its reasoning in United Artists, the Third Circuit noted that:

> [E]very appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal authority, but "it is not enough simply to give these state law claims constitutional labels . . . in order to raise a substantial federal question under section 1983."

Id.

In this case, much like the allegations in Eichenlaub, Plaintiff has alleged that Defendants: (1) refused to apply the appropriate laws, ordinances, and codes; (2) acted in a manner calculated to delay, frustrate, and ultimately discourage Plaintiff from developing its property; (3) arbitrarily and/or for retaliatory purposes refused to grant approvals, licenses, and permits sought by Plaintiff; (4) accepted a $1,640 license fee from Plaintiff, but refused to grant

16

the license; and (5) instructed the solicitors office to institute a motion to compel Plaintiff to turn over ten acres of land to the Township despite the Township's knowledge that it was not legally entitled to the land. (Am. Compl. ¶¶ 1, 37, 52.) Notably, Plaintiff makes no allegation of corruption or self-dealing.

Even when considered in their totality, it is clear that Plaintiff's allegations do not eclipse the typical issues that arise in land-use disputes with local officials. As the Third Circuit opined in Maple Properties, the "conduct of officials in this case may have been 'unfair' or 'improper' from [plaintiff's] perspective, but there is no evidence of the patently egregious behavior . . . to constitute a substantive due process claim." 151 Fed. App'x at 180. Plaintiff's allegations, even when accepted as true at the motion to dismiss stage, are not egregious and do not meet the conscience-shocking standard. If Plaintiff made any allegations demonstrating corruption or self-dealing by Defendants, or interference with constitutionally protected conduct, the Amended Complaint might survive a Motion to Dismiss. However, Plaintiff's assertions are precisely the type of land-use disputes that are properly adjudicated in state court. Consequently, Plaintiff's substantive due process claims in Counts I and II of the Amended Complaint will be dismissed.

### E.    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state . . . shall deny any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV. To state an Equal Protection claim as a "class of one," Plaintiff must allege that (1) he was intentionally treated differently than similarly situated property owners, and (2) there was no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). The

Olech case held that a class-of-one equal protection claim may be pursued even when a plaintiff does not allege membership in a constitutionally protected class or group. 528 U.S. at 564.

As recently as 2008, the Third Circuit acknowledged that it has "little jurisprudence discussing this 'class of one' theory." Phillips, 515 F.3d at 243. Due to the lack of precedent in this Circuit, the Phillips court relied on a decision of the Second Circuit, which found that Olech did not "establish a requirement that a plaintiff identify in a complaint actual instances where others have been treated differently for purposes of equal protection." Phillips, 515 F.3d at 244 (quoting DeMuria v. Hawkes, 328 F.3d 704, 707 (2d Cir. 2003)). In discussing the Supreme Court's analysis in Olech, the Second Circuit noted that:

> Indeed, it appears that Olech herself did not "name names" in her complaint, but made the more general allegation that similarly situated property owners had been asked for a different easement. The Supreme Court found that such an allegation could "fairly be construed" as sufficient for stating an equal protection claim.

DeMuria v. Hawkes, 328 F.3d at 707 (quoting Olech, 528 U.S. at 565).

In this case, Plaintiff relies on the lenient class-of-one equal protection pleading standard discussed in Phillips and DeMuria. However, in light of developments in federal pleading standards under Iqbal, discussed supra, Plaintiff's reliance on Phillips for the proper pleading standard in class-of-one equal protection cases is misplaced. See Toussie v. Town Bd. of East Hampton, 2010 WL 597469 (E.D.N.Y. Feb. 17, 2010) (finding that the holding in DeMuria is problematic in light of Iqbal and that Twombly and Iqbal "require sufficient factual allegations to make the conclusion of similarly situated plausible").

After Iqbal, it is clear that a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." 129 S. Ct. at 1949. Plaintiff must identify similarly situated individuals who were treated differently and provide some factual support for such allegations. See id. at 1940-41 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.") Moreover, when alleging the existence of similarly situated individuals, a plaintiff must allege "occasions or circumstances" of differential treatment. Conklin v. Warrington Twp., 2008 WL 2704629, at *11 (M.D. Pa. Jul. 7, 2008).

Plaintiff's Amended Complaint makes boilerplate assertions that Defendants' refusal to grant approvals, licenses, and permits was done in favor of the interests of other developers in Tilden Township over those of Plaintiff. (See Am. Compl. ¶¶ 1, 65.) These assertions are devoid of any facts identifying similarly situated developers or specific instances demonstrating a difference in treatment. Only in Plaintiff's Response in Opposition to Defendants' Motions to Dismiss does Plaintiff supplement his claim with the following allegations:

> Plaintiff was treated differently by the Defendants than other real estate developers and business owners operating in Tilden. For example, Tilden, its elected officials and appointed officials supported and approved the license and permit applications of other commercial businesses (i.e. Cabela's) and high-end real estate developers over Plaintiff and his Mobile Home Park development.

(Pl.'s Response in Opposition to Township Defendants' Motion to Dismiss, 18.) These assertions were reiterated during the hearing held on March 12, 2010.

Notwithstanding that the Amended Complaint fails to meet the pleading standard under Iqbal, 129 S. Ct. 1937, this shortfall is not rectified by Plaintiff's additional assertions. In referring to the alleged similarly situated entities as "commercial businesses" and "high-end real

19

estate developers," Plaintiff misses the mark. The Mobile Home Park is, for all intents and purposes, a residential community, not a commercial business development, and there is no averment that the Mobile Home Park is a high-end real estate development. Thus, even crediting Plaintiff's argument as true for purposes of deciding a Motion to Dismiss, it fails to identify similarly situated developers. Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008) (noting that, under the equal protection clause, similarly situated means being alike "in all relevant aspects."). Apples must be compared to apples. In this case, Plaintiff has only offered oranges for purposes of comparison.

Accordingly, even accepting Plaintiff's additional allegations in his responsive briefs and at the March 12, 2010 hearing, there are no facts to support an inference that similarly situated developers were treated differently. For these reasons, Plaintiff has failed to plead sufficient facts to raise his right to relief above the speculative level, and his equal protection claim will be dismissed.

### F. Conspiracy

A Section 1983 conspiracy claim may be proved by establishing that "two or more conspirators reached an agreement to deprive [Plaintiff] of a constitutional right 'under color of law.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)), abrogated on other grounds by United Artists, 316 F.3d 392 (3d Cir. 2003).

As a threshold matter, in all Section 1983 claims, a plaintiff must allege that the defendants deprived him of a constitutional right while acting under color of state law. Because Plaintiff has failed to adequately plead any constitutional violations, Plaintiff's conspiracy claim

must also fail.  Teed v. Hilltown Twp, 2004 WL 1149486, at *4 n.5 (E.D. Pa. May 20, 2004)

("There is no cause of action for conspiracy under § 1983 in the absence of an underlying

substantive due process claim or other constitutional violation."); Holt Cargo Sys., Inc. v. Del.

River Port Auth., 20 F. Supp.2d 803, 843 (E.D. Pa. 1998) (noting that an actual denial of a civil

right is necessary before a cause of action for conspiracy arises).  Therefore, Plaintiff's

conspiracy claim in Count III of the Amended Complaint will be dismissed.

### G.  Impairment of Contracts

Article I, Section 10 of the United States Constitution provides that "no state shall . . .

pass any  . . . Law impairing the obligation of contracts."  To state a claim under the Contract

Clause, Plaintiff must allege that:

> [A] "change in state law has 'operated as a substantial impairment of
> a contractual relationship.'" . . . Thus, Contract Clause analysis
> requires three threshold inquiries: (1) whether there is a contractual
> relationship; (2) whether a change in a law has impaired that
> contractual relationship; and (3) whether the impairment is
> substantial."

Transport Workers Union of Amer., Local 290 v. Se. Pa. Transp. Auth., 145 F.3d 619, 621 (3d

Cir. 1998) (citations omitted).

Plaintiff avers that Defendants' actions in enforcing inappropriate ordinances, issuing

stop-work orders, failing to provide public water, denying building permits, and instructing the

solicitor to initiate eminent domain proceedings violated the terms of the Berks County Court of

Common Pleas Consent Order (i.e., the contract).[11]  (Am. Compl. ¶¶ 77-78; Pl.'s Response in

---

[11] Defendants do not dispute that the Consent Order is a contract and the parties have not
briefed this issue.  At least one district court has intimated that a Consent Order could be subject
to an impairment of contracts claim under the Contract Clause.  General Motors Corp. v.
Abrams, 703 F. Supp. 1103, 1109 n.2 (S.D.N.Y. 1989), rev'd on other grounds, 897 F.2d 34 (2d

Opposition to Township Defendants' Motion to Dismiss, 28-29.)  Plaintiff further alleges that:

> All of the aforementioned actions required the defendants to take
> official action through various motions, resolutions and approvals by
> the governing officials and agents of defendants.

(Pl.'s Response in Opposition to Township Defendants' Motion to Dismiss, 28-29.)

In sum, Plaintiff asserts that Defendants' "motions, resolutions and approvals" amount to laws of the state sufficient to show that Defendants' change in the law caused an impairment of the parties' contract.  However, none of Defendants' alleged actions amount to a change in law sufficient to mount a Contract Clause claim.

To fall within the province of the Contract Clause, "not only must the contractual obligation be impaired, '... it must have been impaired by a law of the State.  The prohibition is aimed at the legislative power of the state.'" Skoutelas v. Port Auth. Of Allegheny County, 2008 WL 1773876, at *3 (W.D. Pa. Apr. 16, 2008) (quoting New Orleans Waterworks Co. v. La. Sugar Ref. Co., 125 U.S. 18, 30 (1888)).   Legislative power is the "lawmaking power of a legislative body involving actions that relate to subjects of permanent or general character" or laws of general application.  Id. at *4.

The alleged motions, resolutions, and approvals at issue in the present case are not laws of general applicability, nor are they related to subjects of permanent or general character. Rather, they were administrative actions taken to apply Township zoning regulations to Plaintiff

Cir. 1990).  Generally, Consent Orders have been deemed contracts for interpretation and enforcement purposes.  Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 271 F.3d 235, 237 (6th Cir. 2001).  However, the Supreme Court has noted that Consent Orders may not be treated as contracts in all respects. U.S. v. ITT Continental Banking Co., 420 U.S. 223, 237 n.10 (1975). Because Plaintiff's allegations under the Contract Clause are essentially analogous to a claim brought to enforce the Consent Order, the Court finds application of the Contract Clause appropriate in this case.

during the planning and development process of the Mobile Home Park. See, e.g., Botton v. Marple Twp., 689 F. Supp. 477, 483 (E.D. Pa. 1988) (ruling on application for zoning variance is administrative function); Jodeco, Inc. v. Hann, 674 F. Supp. 488, 494-95 (D.N.J. 1987) (enforcing zoning laws is an administrative, not legislative function). Thus, beneath the guise of Plaintiff's Contract Clause claim lies, in reality, a breach of contract claim arising from administrative action that somehow impacts the Consent Order. As noted above, Plaintiff has appropriate remedies to resolve such a breach of contract claim under Pennsylvania law. Specifically, Plaintiff may pursue a claim for breach of the Consent Order before Judge Schmehl, who issued the Order in the underlying state court litigation between Plaintiff and Township Defendants.

Although Plaintiff may have a plausible state law claim that Defendants' actions are in breach of the Consent Order, the Contract Clause may not be used to convert an ordinary breach of contract claim into a federal constitutional action merely because a state actor is alleged to have caused the breach. Mariniello v. Shell Oil Co., 511 F.2d 853, 859 (3d Cir. 1975). Accordingly, Plaintiff's Contract Clause claim will be dismissed.

### H. Takings Clause

The Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides, inter alia, that: "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V; Cowell v. Palmer Twp., 263 F.3d 286, 290 (3d Cir. 2001). A Takings Clause claim is "not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Williamson County Regional Planning Comm'n v.

Hamilton Bank of Johnson City, 473 U.S. 172, 186 (1985).  Additionally, a claim is not ripe if

Plaintiff "did not seek compensation through the procedures the State has provided for doing so."

Id. at 195.  As the Supreme Court stated in Williamson:

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. . . . Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a "reasonable, certain and adequate provision for obtaining compensation" exist at the time of the taking. . . . If the government has provided an adequate process for obtaining compensation, and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government" for the taking.  Thus . . . . if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation . . . until it has used the procedure and been denied just compensation.

Id. (citation omitted); see also County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 164

(3d Cir. 2006) (applying the Williamson ripeness analysis).

As previously discussed, Pennsylvania's Eminent Domain Code, 26 Pa. C.S.A. § 101 et

seq., provides adequate procedures "through which a landowner may seek just compensation for

the taking of property." Chainey, 523 F.3d at 223.  During the March 12, 2010 hearing,

Plaintiff's Counsel acknowledged that he has appealed the state court Declaration of Taking and

oral argument on the appeal was scheduled to take place in March 2010.

It is apparent that Plaintiff has adequate recourse under the Eminent Domain Code and

has availed himself of the process, which remains pending in the state courts.  Accordingly,

Plaintiff's Takings Clause claim is premature until such time as he has exhausted the state court

remedies under the Eminent Domain Code.  Chainey, 523 F.3d at 222-23.  For the foregoing

reasons, Plaintiff's Takings Clause claim will be dismissed.

## I.    Qualified Immunity

The Individual Defendants have raised the defense of qualified immunity.  However, having found that Plaintiff failed to plead a cause of action for any constitutional violations, and that Plaintiff's Amended Complaint will be dismissed, the Court need not address the issue of qualified immunity.  Speck v. City of Philadelphia, 2008 WL 115005 (E.D. Pa. Jan. 10, 2008).

## J.    Punitive Damages

The Township argues that, under Section 1983, Plaintiff is not entitled to punitive damages against the Township.  It has long been established that municipalities cannot be held liable for punitive damages in Section 1983 suits. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).[12]  Although the Court has already noted that Plaintiff's Amended Complaint will be dismissed in its entirety, the Court credits Defendants' argument and finds that punitive damages would not be permissible on the Section 1983 claims against the Township.

## VI.    CONCLUSION

Plaintiff's allegations do not rise above the routine disputes that are common between local governments and land developers.  Without more, the allegations in the Amended Complaint do not plausibly show any constitutional violations.  Plaintiff essentially asks this Court to perform the role of a zoning board of appeals, a role that federal courts are loathe to accept.  Accordingly, Defendants' Motions to Dismiss will be granted and Plaintiff's Amended Complaint will be dismissed.

Furthermore, it is within the Court's discretion whether to grant Plaintiff leave to amend

---

[12] Plaintiff's Counsel stipulated to this statement of law during the March 12, 2010 hearing.

after granting the Motions to Dismiss.  <u>Hill v. City of Scranton</u>, 411 F.3d 118, 134 (3d Cir. 2005); Fed. R. Civ. Proc. 15(a)(2).  Leave to amend may be denied if "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."  <u>Hill</u>, 411 F.3d at 134.

Upon review of the allegations in Plaintiff's Amended Complaint, Plaintiff's exhibits, and the arguments of Counsel at the March 12, 2010 hearing, it would be futile to allow Plaintiff to file a Second Amended Complaint.  Plaintiff has supplied the Court with many instances of alleged wrong-doing by Defendants, but the Court is not satisfied that any of Defendants' actions, even when considered in their totality and in the light most favorable to Plaintiff, amount to constitutional violations.  The allegations merely show that Plaintiff has a garden-variety land-use dispute, which can be fully adjudicated in state court under Pennsylvania law.  Therefore, Plaintiff will not be granted leave to file a Second Amended Complaint.  An appropriate Order follows.